646 P.2d 441

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Charley Carver FENLEY, Defendant-Appellant.**

**No. 13481.**

Court of Appeals of Idaho.

June 8, 1982.

Isaac McDougall, Pocatello, for defend-ant-appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-respondent.

BURNETT, Judge.

The Fenley house in Boise was quiet. The body of Dorothy Fenley remained in a chair where she had been sitting when a shotgun blast struck her. Nearly a full day later, the crime had not yet been discovered.

A telephone rang at the home of an Ada County deputy coroner. A male voice told him to go to a specified address where he would find a woman shot to death in a chair. At first the anonymous call was disregarded. But shortly thereafter an inquiring neighbor discovered the body, and the deputy coroner was dispatched to the scene.

After examining the body, the deputy coroner met Charley Fenley at the neighbor's residence. They had talked only for a moment when the deputy coroner abruptly broke off the conversation. "That's the guy I talked to on the phone," he exclaimed to a police officer. "It's the husband."

After several weeks of investigation, the police arrested Fenley and charged him with first degree murder. A jury found him guilty as charged. He is now serving a life sentence in custody of the Board of Correction.

In this appeal the central issue is whether the deputy coroner's identification of Fenley, as the anonymous telephone caller, should have been admitted in evidence. We are also asked to decide whether certain photographs of the victim should have been admitted, and whether the jury's verdict was adequately supported by the evidence. We affirm the judgment of conviction.

I

Disputes about identity of parties to telephone conversations are not new to Idaho. In *Tonkin-Clark Realty Co. v. Hedges*, 24 Idaho 304, 133 P. 669 (1913), our Supreme Court upheld admission of evidence identifying a party to whom a telephone call had been made. In the instant case, however, the state sought to introduce against Fenley evidence of a telephone call that *he* allegedly made. Identification of a party called is measured by rules different from those which apply to identifying the party making a call. *State v. Marlar*, 94 Idaho 803, 807 n.1, 498 P.2d 1276, 1280 n.1 (1972).

In *Marlar*, our Supreme Court considered the nature of proof necessary to identify a telephone caller. However, the record in *Marlar* contained no evidence of voice recognition by the witness who received the telephone calls in question. The present case is the converse of *Marlar*. In *Marlar* there was self-identification by the caller, but no testimony as to voice recognition by the witness. Here, the caller did not identi-

fy himself, but the witness claimed to recognize the voice after a subsequent contact in person. The witness was allowed, over objection, to state his opinion concerning the identity of the caller. Thus, the precise issue in this case—whether a witness may identify an anonymous caller based upon subsequent voice recognition—is one of first impression in our state. The issue goes to the *admissibility* of the evidence, not to its weight. *Compare, e.g., United States v. Washington*, 253 F.2d 913 (7th Cir.), *rev'd*, 357 U.S. 348, 78 S.Ct. 1373, 2 L.Ed.2d 1368 (1958); *People v. Abelson,* 309 N.Y. 643, 132 N.E.2d 884 (1956).

Fenley, whose counsel has written a detailed brief on this issue, argues that the instant case is distinguishable from a host of reported cases in other jurisdictions, where such testimony has been admitted. He points in this case to the witness' lack of any prior familiarity with the caller, the limited number and duration of contacts between the witness and the caller, and the fact that the telephone call was not awaited or received from an expected source. *Compare* cases cited in Annot., 79 A.L.R.3d 79 (1977). However, the reported decisions generally uphold testimony of voice recognition based upon familiarity acquired after, as well as before, the conversation in question. *See* cases cited in Annot., 70 A.L. R.2d 985, 1002 (1960). Moreover, in our view, the issue is not merely where this case might fall in a catalog of fact patterns. The fundamental issue is whether the testimony in question was admissible under established rules of evidence.

In this context, we take Fenley's argument to embrace two related propositions—that the deputy coroner was not competent to testify about voice recognition, or that if he was competent, his claim of voice recognition was not adequate to support his statement of opinion concerning identity of the caller. Fenley also levels a separate attack on the probative value of the testimony. We will examine the evidence from each of these perspectives, in turn.

*Competency of Witness*

The concept of "competency" includes both a witness' general capacity to speak the truth, and the witness' capacity to testify about a particular matter. McCORMICK ON EVIDENCE (E. Cleary 2d ed. 1972) § 69, p. 149. Competency in the latter sense requires that a witness be able to perceive, to recollect and to communicate regarding the occurrences mentioned in his testimony. *Clark v. Gneiting*, 95 Idaho 10, 501 P.2d 278 (1972); *State v. Johnson*, 92 Idaho 533, 447 P.2d 10 (1968). In this case, the general capacity of the deputy coroner—a seasoned law enforcement officer—to speak the truth, and his ability to recollect or to communicate, have not been questioned. Neither does Fenley appear to contend that only an "expert" could recognize a voice. Rather, we understand Fenley to urge that, because the telephone call and subsequent contact were brief, the deputy coroner had an insufficient opportunity to perceive whether the voices were in fact the same.

The deputy coroner testified that the telephone caller had a distinctively low, male voice and slurred his speech. The caller asked, "Are you the coroner? "

"Yes."

"Go to 2510 North 30th. You'll find a woman shot to death in the chair."

"What's the woman's name?"

"Dorothy Elizabeth Fenley."

"What's your name?"

"Never mind." The caller hung up.

Approximately ninety minutes later, the deputy coroner talked to Fenley in person. He testified that Fenley was intoxicated, that he had a low voice sounding like the voice on the telephone, and that his speech was slurred. The deputy coroner asked him, "Can you tell me where you been the last 24 hours?"

"I was in McCall. I just got home."

"You been over at the house?"

"Yes. But I don't want to go back."

"Is there any first of kin here in town we can notify?"

"Never mind. I do that."

As noted earlier, the deputy coroner terminated the discussion, believing that the previous caller had been Fenley.

■ The competency of a witness to testify concerning a particular matter is for the trial judge to determine. *Clark v. Gneiting, supra.* A determination that the witness was afforded adequate opportunity to perceive the facts to which he testifies, and that he is competent to testify, rests in the sound discretion of the trial court. Such a determination will not be set aside absent an abuse of discretion. *Egede-Nissen v. Crystal Mountain, Inc.,* 21 Wash.App. 130, 584 P.2d 432, *modified on other grounds & aff'd,* 93 Wash.2d 127, 606 P.2d 1214 (1978); *cf. State v. McKenney,* 101 Idaho 149, 609 P.2d 1140 (1980).

■ In the instant case the trial court noted that, although the telephone and personal conversations were brief, they occurred close together in time, providing the deputy coroner an opportunity to make a fresh comparison. Moreover, the district court noted that in both conversations, according to the testimony, the phrase "never mind" was used, allowing the witness to make such a comparison, in part, on the basis of identical words spoken. We hold that the district court did not abuse its discretion by ruling, implicitly, that the deputy coroner was competent to testify about voice recognition.

### Identification of Caller

■ We turn next to the argument that, even if the deputy coroner was competent to testify, his claimed recognition of the voice did not provide an adequate basis for an opinion concerning the identity of the caller. A trial court, in its discretion, may allow a lay witness to state an impression or conclusion about a matter of fact within his knowledge. *Howard v. Missman,* 81 Idaho 82, 337 P.2d 592 (1959); *cf. Pierce v. Barenberg,* 91 Idaho 354, 421 P.2d 149 (1966). Consequently, it is the underlying factual basis of the deputy coroner's testimony, not the opinion format of his testimony, that is at issue here.

In *State v. Marlar, supra,* our Supreme Court stated that voice recognition is "the most usual if not the most reliable mode of identification" of a party placing a telephone call. 94 Idaho at 807, 498 P.2d at 1280. The court said that voice recognition may be based upon "the same voice, speech mannerisms, or other identifying characteristics . . . ." 94 Idaho at 809, 498 P.2d at 1280.

■ In the present case the deputy coroner testified that he heard the same distinctively low voice in both conversations, that the speech was slurred on both occasions, and that Fenley was visibly intoxicated when contacted in person. In addition, we note that the telephone caller referred to the victim by her full name, "Dorothy Elizabeth Fenley." Use of the victim's middle name would support an inference that the caller was a close friend or relative; and it was consistent with the deputy coroner's voice recognition of the husband. We hold that the deputy coroner's testimony was sufficiently grounded in specific facts to be admitted in evidence. The credibility and weight accorded to such evidence were for the jury to determine.

### Probative Value of Testimony

Taking a somewhat different tack, Fenley suggests that the deputy coroner's testimony was not relevant to the case or, if relevant, should have been excluded because its prejudicial impact exceeded its probative value. We cannot agree. Fenley was charged with killing his wife. He interposed an alibi defense, claiming that he knew nothing about the crime until he returned home from a trip and was notified by the neighbor who discovered the body. In contrast, the deputy coroner's testimony, if believed, showed that Fenley was aware of the crime before the neighbor's discovery, and knew that the victim was "shot to death in a chair." The testimony logically tended to inculpate Fenley and to disprove his alibi. Accordingly, we hold that the testimony was relevant to material issues in the case. *See, e.g., State v. Farris,* 48 Idaho 439, 282 P. 489 (1929).

Further, we find nothing inherently inflammatory about the testimony itself. The only prejudice we discern is that which naturally flowed from the probative value of the evidence. Probative evidence is always prejudicial to someone. Unless the prejudice is unfair, it affords no basis to exclude the evidence. *Compare State v. Goodrich*, 97 Idaho 472, 546 P.2d 1180 (1976); *State v. Wilson*, 93 Idaho 194, 457 P.2d 433 (1969). We sustain the district court's decision to admit the deputy coroner's testimony into evidence.

## II

Fenley next contends that photographs marked as Exhibits 1 and 3, showing the victim's body in the chair, should have been excluded from evidence. He argues that they were prejudicial and had no probative value because they depicted nothing which could not have been gleaned by the jury from another photograph, marked as Exhibit 11.

Exhibit 11, admitted without challenge, is a small color photograph of part of the living room where the victim's body was found. Exhibit 1 is a large color photograph of the same corner of the living room. The victim's entire body, the furniture near the body, and small decorative items on the furniture, are visible. Exhibit 3 is a large color photograph focusing on the victim. It depicts the gunshot wound and shows blood stains not clearly visible in Exhibit 11. Although no picture of a deceased person is pleasant to view, none of the photographs in question here was gruesome.

In response to Fenley's objections at trial, the state urged that Exhibit 1 be admitted because it provided a better view of the wound, showed the position in which the deceased was found, and indicated the lack of struggle with an assailant. The state asked that Exhibit 3 be admitted to provide a better view of the blood stains on the deceased's clothes and on the side of the chair. As noted in the next section of this opinion, the flight characteristics of blood from a shotgun wound figured prominently in the state's circumstantial evidence linking Fenley to the crime.

The admission of photographs rests largely within the discretion of the trial court. Absent an abuse of discretion, the trial court's decision will be upheld. *See State v. Hokenson*, 96 Idaho 283, 527 P.2d 487 (1974); *State v. Beason*, 95 Idaho 267, 506 P.2d 1340 (1973). Our Supreme Court expressed the general rule for the admission of photographs in *State v. Martinez*, 92 Idaho 183, 188, 439 P.2d 691, 696, *cert. denied*, 393 U.S. 945, 89 S.Ct. 317, 21 L.Ed.2d 283 (1968):

> [P]hotographs of the victim in a prosecution for homicide, duly verified and shown by extrinsic evidence to be faithful representations of the victim at the time in question are, in the discretion of the trial court, admissible in evidence as an aid to the jury in arriving at a fair understanding of the evidence . . . .

The photographs in question were duly verified, and there is no claim that they were not faithful representations of the victim.

In our view, all three photographic exhibits served a probative purpose. There was some degree of repetition among the photographs, but this does not mean that their probative value was exceeded by any prejudicial impact. *See State v. Thomas*, 110 Ariz. 120, 515 P.2d 865, 875 (1973); *State v. Beason, supra.* We hold that admitting Exhibits 1 and 3 was within the district court's sound discretion.

## III

Finally, Fenley maintains that the state's evidence was insufficient to convict him of first degree murder. On appeal, our review of the sufficiency of the evidence is limited in scope. A judgment of conviction, entered upon a jury verdict, will not be set aside where there is substantial evidence to support it. *E.g., State v. Horn*, 101 Idaho 192, 610 P.2d 551 (1980); *State v. Holder*, 100 Idaho 129, 594 P.2d 639 (1979); *State v. Erwin*, 98 Idaho 736, 572 P.2d 170 (1977). The jury is accorded the right to determine the credibility of witnesses, to weigh the

evidence, and to draw all justifiable inferences. *E.g., State v. Greene*, 100 Idaho 464, 600 P.2d 140 (1979); *State v. Lewis*, 96 Idaho 743, 536 P.2d 738 (1975).

In the instant case, to prove first degree murder, the state was required to show that the killing was wilful, deliberate, and premeditated, with malice aforethought. I.C. §§ 18–4001—4003. The record contains evidence that Fenley and his wife had separated in contemplation of divorce. A few days before the killing, Fenley visited his cabin near Cascade (apparently termed "McCall" during Fenley's personal conversation with the deputy coroner), where he kept a shotgun. On the fatal evening, Fenley was seen in his truck outside the home where his wife was living. A few moments thereafter, a neighbor heard a loud male voice demanding entry to the Fenley residence. Later that evening Fenley drove back to the cabin, and returned to Boise the next day. As noted earlier, the deputy coroner testified that a man he identified as Fenley attempted to report the homicide anonymously, before the victim's body had been discovered. Fenley was intoxicated when the body was discovered, but there was no evidence that he had been intoxicated on the day of the murder.

During the police investigation, the shotgun was found in the attic of Fenley's cabin. Although the attic was dusty, the shotgun appeared to be clean. Fenley claimed that he had kept a leaf bag over the gun, but the investigating officer found no leaf bag in the attic.

Expert testimony established that a shotgun had been fired approximately three feet from the victim, and that small quantities of blood would have flown back from the wound toward the murder weapon. Traces of human blood were found on the barrel of Fenley's shotgun. The size of shotgun shell wadding found in the victim's body was consistent with the sixteen gauge bore of Fenley's shotgun. The wadding and pellets retrieved from the body were the same size and type as those found in shotgun shells at Fenley's cabin.

Upon these facts, and upon justifiable inferences the jury could draw from them, we hold that there was substantial inculpatory evidence on each element of first degree murder. Fenley contends that premeditation was not established. We disagree. The evidence would support a finding that Fenley planned the murder of his wife.

Fenley further submits that a conviction cannot be based upon circumstantial evidence where such evidence is capable of explanation by a reasonable hypothesis consistent with innocence. This premise is correct, as far as it goes. *See e.g., State v. Carlson*, 53 Idaho 139, 22 P.2d 143 (1933). In fact, the jury in this case was so instructed. However, the premise does not displace the jury's right to draw justifiable inferences from the evidence. The reasonableness of a hypothesis consistent with innocence must be determined from the evidence, including justifiable inferences drawn as the jury apparently drew them.

On appeal, where a defendant stands convicted, we view the evidence most favorably to the prosecution. *State v. Greensweig*, 103 Idaho 50, 644 P.2d 372 (Ct.App.1982); *State v. Cypher*, 92 Idaho 159, 438 P.2d 904 (1968). A mere possibility of innocence will not invalidate a verdict of guilty on appeal. *State v. Price*, 93 Idaho 615, 469 P.2d 544, *cert. denied*, 400 U.S. 959, 91 S.Ct. 359, 27 L.Ed.2d 268 (1970). We conclude that the jury's verdict in this case is supported by substantial evidence, including justifiable inferences. It will not be set aside.

The judgment of conviction is affirmed.

WALTERS, C. J., and SWANSTROM, J., concur.