696 P.2d 930

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Jose Isidore VALDEZ-ABREJO, Defendant-Appellant.**

**No. 14908.**

Court of Appeals of Idaho.

March 13, 1985.

Gaylen Box and Robert Ted Israel, Pocatello, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., John J. McMahon, Chief Deputy Atty. Gen., Boise, for plaintiff-respondent.

Before WALTERS, Acting C.J., and BISTLINE and OLIVER, Acting JJ.

BISTLINE, Acting Judge.

Appellant, Jose Valdez-Abrejo, was convicted of second degree murder for the May 23, 1982, shooting of his wife, Margaret Valdez. The facts which lead to the death of Mrs. Valdez are not in dispute. Both were residents of Pocatello, Idaho, where the shooting occurred. Appellant and his wife had been separated for approximately one week prior to the shooting, during which time heated discussions and talks of divorce had occurred. During the evening of May 22, 1982, appellant had discovered his wife with her sister in the Alley Oops bar. At that time, Mr. Valdez-Abrejo asked his wife to return home with him to discuss their marital discord, and hopefully work out some of their differences. Mrs. Valdez refused to talk to her husband and excused herself to the ladies' room from which she exited the bar unnoticed and left for a dance.

Upon discovering his wife's absence from the bar, Mr. Valdez-Abrejo returned home

where he found his wife's daughter locked into a bedroom. After breaking the door to the bedroom, he began making incoherent and threatening statements to the daughter. He demanded to know where his wife was, but the daughter told him she did not know. Mr. Valdez-Abrejo left his home and returned to the Alley Oops bar. He had armed himself with a .357 magnum revolver.

When he entered the bar, Mr. Valdez-Abrejo saw his wife sitting at the bar next to her ex-boyfriend, Fernando Cuevas. Mr. Valdez-Abrejo approached his wife and grabbed her by the arm, demanding she leave with him. She refused. Fernando Cuevas and Mr. Valdez-Abrejo exchanged a few cross words. Mr. Valdez-Abrejo testified that Cuevas, as he stood up, reached toward his belt. Appellant pulled his gun and began shooting. In the ensuing melee, Mrs. Valdez was shot and killed. Cuevas escaped unharmed. Upon seeing what he had done, appellant fired two shots at his head—inflicting non-fatal injury.

The prosecutor brought charges of first degree murder. At trial, the appellant admitted to killing his wife, but contended that the crime was committed in the heat of passion, hence he was only guilty of voluntary manslaughter. The jury was instructed on the requirements for first degree murder, second degree murder and manslaughter. It returned a verdict of second degree murder.

On appeal to this Court, appellant raised the following four issues: (1) the acceptance into evidence of photographs of the decedent at the scene was reversible error; (2) the evidence produced at trial was insufficient to support a conviction for the offense of murder in the second degree; (3) the trial judge's failure to grant a continuance at the time of sentencing so that the defendant could procure witnesses to testify on his behalf was reversible error; and (4) the sentence pronounced by the trial judge was excessive and therefore constituted the imposition of cruel and unusual punishment.

## I.

Although, we do not view the admission of the photographs taken of the victim at the scene of the shooting as amounting to reversible error, we question that the photographs were necessary to the prosecution's case, and see merit in defendant's assertion that the exhibits very likely were intended to inflame the jury. The prosecutor's contention was that the photographs would show the wounds more graphically and assist the pathologist in his testimony. The pathologist, testifying on behalf of the state, did say that the one 8″ X 14″ color photograph was helpful in explaining the character of the wounds. On that basis, the trial judge reluctantly admitted the photographs. Defendant urges upon us that because the probative value of the exhibit did not outweigh the inflammatory effect, the trial court was in error. *State v. Beason*, 95 Idaho 267, 506 P.2d 1340 (1973); *see also State v. Martinez*, 92 Idaho 183, 439 P.2d 691 (1968). Appellant also argues that the photographs were irrelevant where he admitted to shooting his wife. Where the only question for the jury was whether the killing was or was not in the heat of passion or was an intentional act, we fail to see the photographs as being relevant.

Moreover, although the pathologist did say that the photographs would assist him in testifying, he did not base his testimony on the pictures. Rather, he used a plastic model of the human body to demonstrate to the jury the probable entry, exit and trajectory of the bullet which, in his opinion, killed Mrs. Valdez. Under the circumstances, the prosecuting attorney, in pursuing the admission of these photographs, was taking an unnecessary gamble that he might be inserting reversible error into a trial which was otherwise extremely well-conducted by the trial court and counsel. In determining whether admission of the evidence was prejudicial, we are guided by the case of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), which we have rather consistently fol-

lowed, most recently in *State v. Hoak*, 107 Idaho 742, 692 P.2d 1174 (1984), where the majority held:

> The standard for determining whether an error of constitutional dimension is harmless is "that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *State v. LePage*, 102 Idaho 387, 630 P.2d 674 (1981) (quoting *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)).

> *Id.* 107 Idaho at 748, 692 P.2d at 1180.

Bistline, J., the author of *LePage, supra,* wrote separately to clarify the *Chapman* standard:

> If the Arizona Supreme Court and other state courts are obligated to, and do, apply the *Chapman* [*v. California*, 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705] (1967)] rule, then this Court, too, "before a federal constitutional error can be held harmless, must be able to declare a belief that it was harmless beyond a reasonable doubt." This in turn *does not mean* that this Court can speculate what a jury might have done absent the constitutional error committed, but rather requires "the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Thus, the true test according to *Chapman* is deciding, as the Arizona Supreme Court noted in [*State v. Edwards,* 665 P.2d 59 (Ariz. 1983)] using language from *Chapman,* "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction."

> *"Error in admitting plainly relevant evidence which possibly influenced the jury adversely to a litigant cannot,* under *Fahy,* [*v. Connecticut*, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963)], *be conceived of as harmless."* *Chapman, supra,* [386 U.S.] at 23 [87 S.Ct. at 828]. As a matter of simple deduction, the hearsay evidence here admitted was rele-

vant, indeed so highly relevant that the prosecution had already remarked to the trial judge his thought that the state "wouldn't have any case at all" without his testimony. What I see today is a return to the proper rule—rather than the rule utilized in *State v. LePage*, 102 Idaho 387, 630 P.2d 674 (1981), where, in an aberration, we applied the Burger language of *Milton v. Wainwright*, 407 U.S. [371] at 378 [92 S.Ct. 2174, 2178, 33 L.Ed.2d 1 (1972)]. *i.e.,* that without reasonable doubt the jury would have reached the same result even without the improper evidence.

> *Hoak, supra,* 107 Idaho at 759–60, 692 P.2d at 1190–91 (emphasis original).

Hence, before us today is the inquiry: Has the state established beyond a reasonable doubt that the error complained of (admission of the photographs) did not contribute to the verdict obtained? The answer to this question is "yes, it did not." There was sufficient alternate evidence of an intentional killing that we are satisfied the admission of the photographs of the victim did not contribute to the jury's decision to convict appellant of second degree murder. The state was able to prove the following facts: the evening of the killing appellant had threatened the victim's minor daughter; appellant was in a highly emotional state during the evening of the shooting; appellant entered the bar with a loaded .357 magnum revolver tucked into his belt and was carrying extra rounds of ammunition. Thus, we conclude that the beneficiary of the constitutional error (the state) was able to convince us beyond a reasonable doubt that the error did not contribute to the verdict of second degree murder. Which is to say that in the first degree murder trial, we conclude that the photographs did not inflame the jury to find that the homicide was second degree murder as against a verdict of manslaughter. Hence, we hold that the admission of the photographs in this case, although unnecessary and ill-considered, was not prejudicial error.

## II.

Appellant also contends that the evidence was insufficient to sustain a verdict of guilty of second degree murder. Specifically, the appellant contends there was insufficient evidence of malice aforethought, and that the evidence at best supports a verdict of the lesser included offense of voluntary manslaughter, i.e., a killing in the heat of passion. I.C. § 18–4006.

We disagree, not only because of our deference for the decision of the jury, but also because we believe there was sufficient evidence of malice aforethought. Concededly, the appellant's behavior during the evening before the killing suggested that the appellant was in a highly excited and aggravated state of mind. Concededly, the week prior to the killing had been extremely stressful and difficult for the appellant because he and his wife had separated and reconciliation negotiations between the two had been unsuccessful. Concededly, the appellant had been drinking during the evening. However, the appellant entered the bar with a loaded gun which he had been carrying throughout the evening. Under these circumstances, we feel justified in concluding the jury properly found the appellant guilty of second degree murder. It is the function of the jury to weigh the evidence and where there is substantial evidence, a verdict will not be disturbed on appeal. *State v. Fenley*, 103 Idaho 199, 646 P.2d 441 (Ct.App.1982); *State v. Horn*, 101 Idaho 192, 610 P.2d 551 (1980).

Although the facts of this case in some respects do indicate passion, and would have supported a conviction of voluntary manslaughter, this was not the case of a heated argument between two individuals which erupted into a fatal shooting. The appellant entered the bar armed with a loaded revolver. He confronted his wife and the man she was speaking to at the bar. Very few words were exchanged before the appellant began firing his weapon. Under these circumstances, the jury could easily have concluded that the appellant entered the bar with the intent to kill or that the intent was formed on his finding his wife in the company of Mr. Cuevas. The jury also heard and was at liberty to believe the latter's testimony.

## III.

Appellant argues he should have been granted a continuance at the time of sentencing to allow him reasonable time to procure additional witnesses to testify on his behalf. We find this argument to be unpersuasive here, where the appellant stipulated at the sentencing hearing as to the content of certain testimony which would have been offered by the absent witnesses in mitigation. Having so stipulated, albeit reluctantly, appellant acquiesced in the procedure, we do not see that the substantial rights were prejudiced.

## IV.

Appellant argues that the sentence he received was excessive, thus constituting cruel and unusual punishment. And, because of its excessiveness, it is contended that the sentence constitutes an abuse of the trial court's discretion.

Idaho Code § 18–4004 provides that imprisonment for murder in the second degree may extend to life. As a general proposition, the Idaho Supreme Court has held that a sentence imposed within the limits prescribed by statute will not be regarded as cruel and unusual. *State v. Angel*, 103 Idaho 624, 651 P.2d 558 (Ct.App. 1982); *State v. Prince*, 97 Idaho 893, 556 P.2d 369 (1976); *King v. State*, 91 Idaho 97, 416 P.2d 44 (1966). Whether a sentence is cruel and unusual depends on whether it is grossly disproportionate. *State v. Goodrick*, 102 Idaho 811, 641 P.2d 998 (1982). We are not persuaded that the imposition of an indeterminate life sentence for second degree murder was an abuse of discretion by the trial court. *State v. Delin*, 102 Idaho 151, 627 P.2d 330 (1981); *State v. Stroup*, 101 Idaho 54, 607 P.2d 1328 (1980).

Indeterminate life sentences on conviction of second degree murder have been upheld. *State v. Stormoen,* 103 Idaho 83, 645 P.2d 317 (1982); *State v. Wilde,* 104 Idaho 461, 660 P.2d 73 (Ct.App.1983); *State v. Kaiser,* 108 Idaho 17, 696 P.2d 868 (1985).

Nor are we persuaded that the district court erred in applying I.C. § 19–2520, the enhancement penalty for use of a firearm in the commission of a felony. *Kaiser, supra.*

The verdict of the jury is sustained and the judgment imposing sentence is affirmed.

WALTERS and OLIVER, Acting JJ., concur.