810 P.2d 1148

**STATE of Idaho, Plaintiff–Respondent,**

**v.**

**Albino OJEDA, Jr., Defendant–Appellant.**

**Nos. 18478, 18858.**

Court of Appeals of Idaho.

May 6, 1991.

WALTERS, Chief Judge.

A jury found Albino Ojeda, Jr., guilty of involuntary manslaughter based on the state's charge that he had shaken his three-month old stepson in such a manner as to cause brain damage leading to death. On appeal, Ojeda challenges the sufficiency of the evidence to support the verdict against him. He also contends he received an excessive sentence and that the court erred in denying his request for a reduction of the sentence.[1] We affirm.

## FACTS

Ojeda was married to Josie Ojeda and was stepfather to her three-month old infant son, Jacob. Josie's sister, Gracie, lived next door to the Ojeda family. On the morning of December 18, 1988, Gracie went to the Ojeda home to drive Josie to the laundromat. She watched Ojeda contentedly playing with Jacob, who was giggling on the bed. The women left together, leaving the infant alone with Ojeda. Approximately one-half hour later, Ojeda arrived at his sister-in-law's doorstep with the infant in his arms and said, "Something's wrong with Jacob." He explained that Jacob had fallen from a chair. Ojeda placed the unconscious infant on a couch and asked Gracie to dial for help. Within minutes, paramedics arrived and, unable to revive Jacob, transported him to the nearby emergency room at Mercy Hospital, in Nampa, Idaho. Jacob was examined and then moved to St. Luke's Regional Medical Center in Boise, for a suspected head injury. Jacob died the next day. A post-mortem examination revealed that Jacob's death resulted from massive brain injuries, but that he had suffered no evident external trauma.

Ojeda maintained that he did not cause the infant's injuries and resulting death. He recounted to his wife, to his sister-in-law, to hospital staff, and to the police, that he merely had laid Jacob in a reclining chair, placing a pillow at his side, and left the room to draw the baby's bath. He

Van G. Bishop, Canyon County Public Defender, for defendant-appellant.

Larry EchoHawk, Atty. Gen., Michael J. Kane, Deputy Atty. Gen., Boise, for plaintiff-respondent.

1. Ojeda filed separate appeals from the judgment of conviction and from the order denying his motion to reduce sentence. The proceedings were consolidated for the purpose of appellate review.

related that when he returned, Jacob was on the floor, apparently having rolled himself off the chair.

The police investigated the incident and a grand jury subsequently indicted Ojeda for involuntary manslaughter. The basis of the indictment alleged that Ojeda had killed the infant by "shaking or otherwise causing Jacob Ojeda to suffer severe and fatal brain injury." Ojeda pled not guilty and requested a jury trial. In presenting its case, the state relied entirely upon circumstantial evidence raising the inference that Ojeda had inflicted the fatal injuries to the child. The jury found Ojeda guilty of involuntary manslaughter, as charged. The trial court sentenced Ojeda to confinement for a mandatory term of two years' followed by a four-year indeterminate term. Ojeda filed a motion to reduce his sentence, pursuant to I.C.R. 35, which the trial court denied. On appeal, Ojeda submits that the evidence presented to the jury was insufficient to support the verdict of guilty. He also claims that his sentence was excessive and that the court abused its discretion in denying his motion for a reduction of the sentence.

## I

■ We first address Ojeda's assertion that the evidence was insufficient to sustain his conviction. The applicable standard of review is whether there was substantial evidence upon which any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Clark*, 115 Idaho 1056, 1059, 772 P.2d 263, 263 (Ct.App.1989). The jury is accorded the right to determine the credibility of witnesses, to weigh the evidence, and to draw all reasonable and justifiable inferences. *State v. Fenley*, 103 Idaho 199, 203–204, 646 P.2d 441, 445–46 (Ct. App.1982). On appeal, the evidence is reviewed in the light most favorable to the state. *Fenley*, 103 Idaho at 204, 646 P.2d at 446.

Involuntary manslaughter is defined, in relevant part, as killing a human being "in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection...." I.C. § 18–4006(2). The state presented medical testimony showing that Jacob had suffered massive, fatal brain damage. The state's witnesses theorized that Jacob had been the victim of "shaken-baby syndrome," which is the rapid, powerful shaking of a young infant with such force as to cause the brain to rapidly accelerate and decelerate inside of the skull, causing injury to the brain. The pathologist, who conducted the post-mortem examination, found evidence of a blood clot or subdural hematoma in the brain matter and testified that these injuries were consistent with the shaken-baby syndrome. His testimony also indicated that a fall from a chair was unlikely to cause that type of injury, and questioned Ojeda's account of the incident.

The emergency room physician at Mercy Hospital who first examined Jacob testified that, although he initially believed Jacob's condition to represent "sudden infant death syndrome," he also suspected that the injuries might have been traumatically caused. He further discounted as a "near impossibility" the theory that the three-month old infant rolled himself off of a piece of furniture. He further concluded that the distance of a fall from a chair to the floor would not cause sufficient trauma to cause the death of a child of that age. The jury also heard from the ophthalmologist who examined Jacob at St. Luke's. Jacob was comatose at the time of the examination. The ophthalmologist described the massive retinal hemorrhages Jacob had sustained. He explained that, in a child under three years of age, the major cause of such an injury is a massive trauma, such as a motor vehicle accident, or the shaken-baby syndrome. He said further that, in the absence of external injuries to the head, massive retinal hemorrhage was a problem specifically related to the shaken-baby syndrome, and that "essentially nothing else can cause this [injury] in a child of this age." The doctor rejected the suggested hypothesis that a fall from a chair had caused the injuries as inconsistent with his observations and knowledge.

Jacob also had been examined by a neurological surgeon who testified at trial that C.T. scans revealed a subdural hematoma. The doctor stated that this particular injury could be caused by either a motor vehicle accident, a fall from fourteen feet, or rapid shaking of the head. He, too, concluded that Jacob's injuries could not have been caused by a two-and-a-half foot fall. The pediatrician who examined Jacob told the jury that the massive nature of the head injuries Jacob had suffered "are unequivocally incompatible" with a fall from a chair. Relating his professional opinion to the jury, the doctor stated, "I feel unequivocally that this baby represents shaken-baby syndrome" to the exclusion of any other causation.

Ojeda offered no competent medical evidence to rebut the state's case. However, his wife testified that Ojeda had never lost his temper with the child, raised his voice at the child or struck the child. Other family members likewise testified that they never had observed any evidence that the child suffered abuse. All of the family members testifying expressed a firm belief in Ojeda's account of the accidental fall, and that Ojeda was incapable of committing the acts alleged by the state.

Upon these facts, and upon justifiable inferences the jury could draw from them, we hold that there was substantial evidence to support the jury's verdict. Ojeda contends that, in view of the emergency room physician's initial impression that Jacob's condition was a result of sudden infant death syndrome, the medical evidence of Jacob's cause of death should be regarded as inconclusive. We disagree. The evidence is more than sufficient to establish that the infant died from traumatic injuries.

■ Ojeda further asserts that his conviction cannot be sustained on the basis of the state's circumstantial, theoretical evidence. He submits that, in the absence of any direct proof that he committed violence or other harmful acts upon the infant, the jury was required to disregard the state's circumstantial evidence in favor of finding him innocent.

■ Ojeda's premise—that a conviction cannot be based upon circumstantial evidence where such evidence is capable of explanation by a reasonable hypothesis consistent with innocence—is correct. *See, e.g., State v. Carlson,* 53 Idaho 139, 22 P.2d 143 (1933); *Fenley,* 103 Idaho at 204, 646 P.2d at 446. However, the premise does not displace the jury's right to draw reasonable, justifiable inferences from the evidence. *Id.* The reasonableness of a hypothesis must be determined from the evidence, including justifiable inferences drawn as the jury apparently drew them. *Id.* A mere possibility of innocence will not invalidate a verdict of guilty on appeal. *State v. Price,* 93 Idaho 615, 469 P.2d 544, *cert. denied,* 400 U.S. 959, 91 S.Ct. 359, 27 L.Ed.2d 268 (1970). Here, the state presented evidence that Jacob suffered massive and severe brain injuries which were inconsistent with the hypothesis that he fell from a chair. We find that this evidence was sufficient from which the jury could reasonably reject Ojeda's inconsistent hypothesis and infer that Ojeda had shaken the child or otherwise caused the fatal injuries. Thus, we conclude that the jury's verdict in this case is supported by substantial evidence, including justifiable inferences. It will not be set aside.

## II

■ We turn next to Ojeda's contention that his unified sentence—two years fixed followed by an indeterminate term of four years—was excessive. Because this sentence was within the ten-year maximum period allowed by statute, we will not disturb it absent a showing that the trial court abused its discretion. I.C. § 18–4007(2); *State v. Hedger,* 115 Idaho 598, 768 P.2d 1331 (1989).

In articulating its bases for the sentence, the district court stated:

The evidence before me is that—is that you, for some reason, got peaked [sic]—disturbed about that, and shook that baby so violently that you killed him. That's what the evidence is in front of

me, and for that you're going to get punished.

Ojeda contends that the trial court abused its discretion by imposing the sentence on the basis of punishment alone, while ignoring relevant mitigating factors. He maintains that the duration of the term of confinement was unreasonable, and that, in the absence of specific findings by the court to justify the length of the sentence imposed, his sentence should be vacated.

■■ A sentence may represent such an abuse if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 645 P.2d 323 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App.1982). Under *Toohill*, a sentence longer than necessary to achieve these goals constitutes an abuse of discretion. *Id.* Where, as here, the challenged sentence was imposed under the Unified Sentencing Act, we treat the minimum period specified by the sentencing judge as the probable duration of confinement. I.C. § 19–2513; *State v. Sanchez*, 115 Idaho 776, 769 P.2d 1148 (Ct.App.1989). Thus, we will treat Ojeda's actual term of confinement as two years.

We note initially that, although a sentencing court is required to consider the substantive criteria set forth in *Toohill*, there exists no corollary requirement that it make specific factual findings in support of the sentence imposed. *See State v. Nield*, 106 Idaho 665, 682 P.2d 618 (1987); *State v. Snapp*, 113 Idaho 350, 743 P.2d 1003 (Ct.App.1984). Thus, in order to prevail on appeal, Ojeda must establish that, in light of the governing criteria, his sentence of two years' minimum confinement was excessive under *any reasonable view of the facts. See State v. Small*, 107 Idaho 504, 690 P.2d 1336 (1984).

When weighing the facts of a given case, we conduct an independent examination of the record. We focus upon the nature of the offense and the character of the offender. *State v. Reinke*, 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982). The facts surrounding the instant offense show that, on the morning Jacob sustained his fatal injuries, Ojeda's family members observed Ojeda peacefully playing with his stepson. Ojeda had not fought with his wife that morning, nor was there any apparent tension in the household. However, while left alone with his stepson for less than one-half hour, Ojeda violently, and unpredictably, evidently shook the infant to death. Concerning Ojeda's character, the record indicates that Ojeda continues to deny his guilt. We further acknowledge that Ojeda had no prior criminal record, save minor traffic violations.

We recognize that the public interest lies not only in being safe from future crimes, but to some extent in seeing that punishment is imposed for crimes committed. *State v. Stormoen*, 103 Idaho 83, 85, 645 P.2d 317, 319 (Ct.App.1982). This interest is particularly strong in crimes involving tragic or senseless acts. *State v. Pettit*, 104 Idaho 601, 603, 661 P.2d 767, 769 (Ct. App.1983). We believe that the public interest in punishing a serious offense, one involving unprovoked violence upon a human being causing his death, amply justifies the two-year minimum sentence of confinement imposed in this case. Additionally, the term of confinement ordered furthers the substantive goal of deterrence—specific deterrence. The record reveals that Ojeda's wife was pregnant at the time of sentencing. The sentence thus may be viewed as reflecting society's interest in protecting other infants from the type of dangerous acts which the jury found Ojeda to have committed upon Jacob. Upon review of the facts before the trial court at the time of sentencing, we are satisfied that the substantive criteria set forth in *Toohill* and *Sanchez* have been met. We conclude that the court did not abuse its sentencing discretion.

### III

■ We next consider Ojeda's challenge to the denial of his Rule 35 motion.

A motion to reduce an otherwise lawful sentence is addressed to the sound discretion of the sentencing court. *State v. Forde,* 113 Idaho 21, 740 P.2d 63 (Ct.App.1987). Such a motion is essentially a plea for leniency, which may be granted if the sentence originally imposed was unduly severe. *State v. Lopez,* 106 Idaho 447, 680 P.2d 869 (Ct.App.1984). The criteria for examining rulings on motions to reduce sentences under I.C.R. 35 are the same as those applied in determining whether the original sentence was reasonable. *Lopez,* at 450, 680 P.2d at 872. If the sentence is not excessive when pronounced, the defendant must later show that it is excessive in view of new or additional information presented with his motion for reduction. If the defendant fails to make this showing, we cannot say that denial of the motion by the district court represents an abuse of discretion. *State v. Morrison,* 119 Idaho 229, 804 P.2d 1360 (Ct.App.1991).

Ojeda submitted with his Rule 35 motion a letter expressing his grief over his loss of freedom, his loss of his stepson, and his lost opportunity to know and to provide for his new daughter born in the meantime. Also filed were letters of support from his wife and her parents. These letters outlined difficulties experienced by the family due to Ojeda's absence from home as a result of his incarceration. The district court received the information but, without a hearing, denied the relief sought. Ojeda contends that the district court abused its discretion by failing to articulate its reasons for denying the motion in view of the strong letters submitted on his behalf. However, the trial court is not required to enter findings in support of its decision on a Rule 35 motion. *See State v. Thomas,* 112 Idaho 1134, 739 P.2d 433 (Ct.App.1987). Having reviewed all the information presented both at the original sentencing and in support of the subsequent motion for reduction, we conclude that the district court did not abuse its discretion in denying Ojeda's Rule 35 motion. Accordingly, the order denying the motion is affirmed.

## CONCLUSION

In conclusion, we affirm the judgment of conviction, including the sentence, and the order denying the request for a reduced sentence.

SWANSTROM and SILAK, JJ., concur.