11 P.3d 1114

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Shawn D. DANIELS, Defendant–Appellant.**

No. 24913.

Supreme Court of Idaho,
Twin Falls, March 2000 Term.

Sept. 27, 2000.

John J. Hansen, Twin Falls County Public Defender; Wells B. Ashby, Assistant Public Defender, Twin Falls, for appellant. Wells B. Ashby argued.

Hon. Alan G. Lance, Attorney General; Alison A. Stieglitz, Deputy Attorney General, Boise, for respondent. Alison A. Stieglitz argued.

SILAK, Justice.

This is an appeal from a judgment of conviction entered upon a jury's verdict, finding Shawn D. Daniels (Daniels) guilty of aggravated assault on a police officer. We affirm.

## I.

## FACTS AND PRECEDURAL BACKGROUND

### A. Factual Background

On September 25, 1997, a neighbor observed two men, Shawn D. Daniels (Daniels) and Ryan Anderson Fowler, attempting to break into the back door of a home during daylight hours. The neighbor called police, and two officers, Sergeant Don Hall and Officer Keri Davis, responded to the call. Officer Davis went along the front of the house and took up a position at the front corner of the house. Sergeant Hall went up the driveway and around the rear of the house on the opposite side from Officer Davis. Hall saw the two men facing the back door of the house, identified himself as a police officer and told them not to move. Both men ran along the back of the house away from Officer Hall.

Officer Davis moved to take cover behind the front corner of the house and observed two men run around the corner of the house from the backyard. One of the men, identified as Daniels, assumed a "combat firing position," pointing a black object in the direction from which he had just come. Officer Davis then identified herself as a police officer and ordered Daniels to drop the object. Daniels complied with her order to drop the object and tossed it into the adjacent bushes. A search of the bushes revealed a .45 caliber handgun with two rounds in the magazine and one in the chamber.

### B. Procedural Background

On October 29, 1997, a criminal complaint was sworn against Shawn D. Daniels for aggravated assault on a law enforcement officer claiming that Officer Hall was put in fear of imminent danger. The complaint cited sections 18–901, 18–905 and 18–915 of the Idaho Code. Daniels was arraigned on the charges on March 18, 1998. An amended complaint was filed on March 26,1998, dropping the claim of knowledge of imminent danger from the charges while citing the same sections of the Idaho Code. An information was filed with the court on April 10, 1998, charging aggravated assault on a law enforcement officer. A motion to dismiss the information was filed by Daniels on May 15, 1998, claiming insufficient evidence to support the information. A hearing on the motion to dismiss was held on May 21, 1998, and the motion was subsequently denied. Daniels was found guilty by a jury of aggravated assault on a law enforcement officer on June 3, 1998 and was sentenced on July 6, 1998 to a five year term with two years fixed and three years indeterminate. Daniels was or-

dered to pay court costs of $38.50, a fine of $500 and a civil judgment of $2,000 to the victim, Officer Hall. A notice of appeal was subsequently filed.

## II.

### ISSUES ON APPEAL

The appellant raises the following issues on appeal:

1. Did the state offer sufficient evidence at jury trial to support the conviction by the jury?

2. Did the district court judge err by improperly limiting the defense in the voir dire process, thereby violating Daniels' Sixth Amendment rights?

3. Did the district court judge err by denying Daniels' motion to dismiss information?

4. Did the trial court abuse its discretion by sentencing Daniels to a five year prison sentence with two years fixed?

## III.

### STANDARD OF REVIEW

■ The standard of review for a jury conviction is stated in *State v. Reyes,* 121 Idaho 570, 826 P.2d 919 (1992) as being:

[W]hether there was substantial evidence upon which any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Filson* 101 Idaho 381, 386, 613 P.2d 938, 943 (1980); *State v. Ojeda,* 119 Idaho 862, 864, 810 P.2d 1148, 1150 (Ct.App.1991). The jury is accorded the right to determine the credibility of witnesses, to weigh the evidence, and to draw all reasonable and justifiable inferences. *Ojeda,* 119 Idaho at 864, 810 P.2d at 1150; *State v. Fenley,* 103 Idaho 199, 203–04, 646 P.2d 441, 445–46 (Ct.App.1982). On appeal, the evidence is reviewed in the light most favorable to the state. *Id.*

121 Idaho at 572, 826 P.2d at 921.

■ The standard of review for a district court's limitations on jury voir dire is an abuse of discretion standard. "It is well settled that the scope of voir dire examina-

tion is within the discretion of the trial judge and that his ruling will not be disturbed except for a manifest abuse of discretion" *State v. Bitz,* 93 Idaho 239, 244, 460 P.2d 374, 379 (1969). This same standard applies to issues involving sentencing and "absent a showing of a clear abuse of discretion, a sentence within the statutory limits will not be disturbed on appeal." *State v. Hedger,* 115 Idaho 598, 604, 768 P.2d 1331, 1337 (1989).

■ The standard for review for the denial of a motion to dismiss the information is also based on the abuse of discretion as stated in *State v. Pratt,* 125 Idaho 546, 873 P.2d 800 (1993):

A magistrate's determination that probable cause exists to bind a defendant over to the district court for trial "should be overturned only on a clear showing that the committing magistrate abused his or her discretion." *State v. Owens,* 101 Idaho at 636, 619 P.2d at 791, citing *State v. O'Mealey,* 95 Idaho 202, 506 P.2d 99 (1973); *Carey v. State,* 91 Idaho 706, 429 P.2d 836 (1967). Where a defendant receives a fair trial, errors connected with the preliminary hearing will afford no basis for disturbing the judgment of conviction. *State v. Mitchell,* 104 Idaho 493, 660 P.2d 1336, cert. denied, 461 U.S. 934, 103 S.Ct. 2101, 77 L.Ed.2d 308 (1983).

125 Idaho at 556, 873 P.2d at 810

## IV.

### ANALYSIS

A. **The State Offered Sufficient Evidence At Trial To Support The Verdict Of The Jury.**

Daniels argues that the state presented inadequate evidence for the jury to return a verdict of guilty on two elements of the charged offense, namely an unlawful attempt and the apparent ability to carry out the act. Daniels cites the requisite elements for an attempt as: "1) an intent to commit it, 2) an overt act toward its commission, 3) failure of consummation, and, 4) an apparent possibility of commission." (Black's Law Dictionary, Abridged, 6th ed.1991).

The Idaho Code, however, does not specify that there must be the immediate possibility of commission of the crime charged. The underlying elements of the crime of assault as defined in I.C. § 18–901(a) are: a) an unlawful attempt, b) coupled with apparent ability c) to commit a violent injury on the person of another.

Daniels cites two Idaho cases as standing for the proposition that a present ability is necessary to be guilty of the crime charged, and that if there is no present ability, there is also no intent. The first case cited, *State v. Yturaspe*, 22 Idaho 360, 125 P. 802 (1912) states:

> [I]f the evidence shows that the gun pointed at the assaulted party is unloaded, although threats are made, *there is not only an absence of a present ability to commit violent injury, but there is also an absence of an intent to inflict a bodily injury,* because the party charged can have no intent to inflict bodily injury, knowing at the time the gun is drawn that the same is unloaded, and that no injury can be inflicted because of the inability to discharge the same. This rule of law necessarily means the proof must show an intent and also a present ability. We think that the above is the correct rule of law, notwithstanding the fact that there are cases holding that the pointing of a rifle at another, with a threat to use it, is of itself evidence of intent to inflict a violent injury and evidence of ability to commit such injury.

(emphasis added). We do not think that the present ability mentioned in *Yturaspe* requires the instantaneous ability but rather indicates having opportunity coupled with all of the necessary means prepared and immediately available for use. Thus, the unloaded gun in *Yturaspe* indicated that all preparation had not been completed in order to commit an assault.

The second cited case, *State v. Bush*, 50 Idaho 166, 295 P. 432 (1930), upholds the same principle, i.e. that an unloaded gun did not give the perpetrator the ability to carry out the threat. The *Bush* Court applied the rule from *Yturaspe*, stating that the gun must be loaded to rise to the level of an attempt. *See Bush* at 168, 295 P. at 434.

Daniels further cites the Idaho Criminal Jury Instructions (ICJI) for support of his argument that his actions were mere preparation rather than a substantial step. ICJI 1453 defines a substantial step as follows:

> For an act to be a step towards committing the crime, the act must be more than merely preparing to commit the crime.... To be a step towards committing the crime, the act must be something done beyond mere preparation which shows that the defendant began carrying out the plan to commit the crime.

ICJI 1453.

The instruction clearly states that merely preparing to commit an act is not enough to be guilty of a crime involving attempt. The evidence must show more than mere preparation occurred in the commission of the crime.

Daniels argues that the *Yturaspe* and *Bush* cases stand for the proposition that the inability to immediately complete the crime negates intent as well. Daniels asserts that the emphasized sentence in the quote from *Yturaspe* indicates that in the absence of an immediate ability to carry out an assault, there is no intent. Daniels essentially argues that the assumption of a "combat stance" while pointing a loaded gun towards a point where a law enforcement officer in pursuit of apparent criminals will appear in a few seconds, is classed as mere preparation.

We find Daniels' arguments to be unpersuasive. While the loading of the gun may have been mere preparation, the assumption of a "combat stance" by Daniels went well beyond mere preparation and is more properly covered by ICJI 1454, which states:

> A person who has committed acts constituting an attempt to commit a crime is guilty of attempting that crime even if the person does not proceed any further with the intent to commit the crime. *It would not matter whether the person voluntarily abandoned any further efforts to complete the crime or was prevented or interfered with in completing the crime....*

ICJI 1454. (Emphasis added).

When a defendant carries a loaded gun during a burglary attempt, he has already

completed any requirement regarding mere preparation. The act of drawing the weapon and pointing it toward an individual or where an individual is expected or known to be, goes beyond mere preparation and goes to the intent to inflict "a violent injury on the person of another."

In Daniels' case, the ability was clearly present, and only a couple of seconds stood between Daniels and the opportunity to commit a crime much more serious than assault. The drawing of his weapon from his pocket and the pointing it at the location where Sergeant Hall would momentarily appear convinced a jury that Daniels had not only the ability but the intent as well. Further, neither the statute nor prior case law require that the intended victim have awareness of the perpetrator's present ability to commit the assault.

Officer Davis' testimony gave substantial and credible evidence showing: 1) Daniels assumed a "combat position" pointing a black object in the direction from which he had come or back towards where Sergeant Hall would appear in a few seconds; 2) Daniels discarded the black object in the adjacent bushes; and 3) the object retrieved from the bushes was a loaded .45 caliber handgun. The jury, having had the opportunity to evaluate witness credibility and veracity, apparently believed that Daniels intended to fire his weapon at Sergeant Hall when he appeared at the corner of the house. Thus it was only Officer Davis' interference with his intent to fire that prevented Daniels from inflicting a violent injury on Sergeant Hall. Since the jury verdict is supported by substantial and credible evidence, this Court will not disturb the jury's verdict.

### B. The District Court Did Not Err By Limiting the Defense In The Voir Dire Process, And Thus Did Not Violate Daniels' Sixth Amendment Rights.

Daniels argues that his rights were violated when the district court refused to allow him to question potential jurors concerning their biases in regard to testimony by police officers and concerning defendants testifying in their own behalf. Daniels cites *State v. Camarillo* as stating the law in this case:

> It is also well settled that placing limits beyond which the voir dire examination may not properly go is a matter which rests in the sound discretion of the trial court. *State v. Pettit*, 33 Idaho 326, 193 P. 1015 (1920) See also I.C.R. 24. The exercise of such discretion will not be disturbed except for a manifest abuse of discretion.

106 Idaho 310, 312, 678 P.2d 102, 104 (1984), (quoting *State v. Hoagland*, 39 Idaho 405, 418, 228 P. 314, 318 (1924)).

The transcript of the voir dire indicates the following exchange took place between the court and defense counsel at the point complained of by Daniels:

> **Mr. Riggins:** [Attorney for Defense] ... Mr. Hyman ... in your experience, how reliable do you feel a police officer's testimony is?
>
> **Court:** This is the same objection I had to the state when they went into this area. That [is] what jur[ors] will be instructed as to how to judge the credibility or ... believability of the witnesses. You may move on.

The district court's comments refer back to an earlier exchange between the court and the prosecuting attorney, Mr. Brody:

> **Mr. Brody:** [referring to a witness' experience with testimony by city Police Officers] Okay. How did ... you look at their testimony? How did you evaluate it?
>
> **Court:** Sir, that has to do with the instructions that I'll be giving as to how ... the jurors are to ... look at the testimony of the witnesses. And therefore, it enters into areas of jury instructions. I'll ask you to ask another question, Mr. Brody.
>
> **Mr. Brody:** Thank you, Your Honor. Did the simple fact that those witnesses were police officers ... make you believe or disbelieve them just right off the bat?

Here Mr. Brody asked a question about how the witness evaluated the testimony of police officers in a previous trial, a question that the court felt went too far into the area of jury instructions. The prosecution was warned not to question potential jurors in

that area. Mr. Brody rephrased the question and then moved on to other subjects without further comment or interruption by the court.

Daniels also cites another exchange that occurred immediately after that first cited above as being the location of another abuse of discretion by the district court. This exchange was in regards to the juror's preference for the defendant testifying in his own behalf:

> Mr. Riggins: Since the prosecution has the ... entire burden of proof, my client has an absolute right ... not to testify and to remain silent during this trial. And this is his right under our system of justice and our constitution. ... I'd like to see a show of hands. Who would like to see Shawn testify at the trial of this matter.
>
> A. (No Response)
>
> Court: ... This is an irrelevant area because I'm going to instruct the jury that he does not need ... to testify and that cannot be used against him. That presupposes that our system is different than it is. So I'm going to ask you to go on to another area, Mr. Riggins.

█ Mr. Riggins then attempted to reopen the area of witness credibility. His attempt to delve into this area was reviewed by the court in a discussion at the bench. Subsequent to the bench conference, which is not included in the transcript, Mr. Riggins asked numerous questions regarding the jurors' reaction to Daniels' possible testimony and the effect of possible evidence on the jurors' ability to assume him innocent until proven guilty. The subsequent questioning was along much the same vein, and elicited generally the same information as the question disallowed by the court regarding Daniels' potential testimony. The defendant suffered no harm from the second limitation complained of, since the same information was obtained from a slightly different line of questioning. Error is prejudicial only if it could have affected or did affect the outcome of the trial. *See* I.R.C.P. 61; *Burgess v. Salmon River Canal Co.*, Ltd., 119 Idaho 299, 306, 805 P.2d 1223, 1230 (1991). Accordingly, we hold that any error committed by

the district court in limiting Daniels' voir dire was harmless.

**C. The District Court Did Not Err By Denying Daniels' Motion To Dismiss The Information.**

This assignment of error was withdrawn by Daniels at oral argument.

**D. The Trial Court Did Not Abuse Its Discretion By Sentencing Daniels To A Five Year Prison Sentence With Two Years Fixed.**

Daniels argues that the sentencing court must not only consider the protection of society and retribution in imposing sentence upon a criminal defendant under section 19–2521 of the Idaho Code, but must consider the other factors as well. He argues that the goals of protection and retribution were met by his incarceration for 284 days prior to sentencing in this matter. In the alternative, he argues that he should be allowed to have some additional imprisonment in combination with the 284 days previously served. He proposes an additional 120 day "rider" to his time served, such that the total would approximate the two year fixed period sentence given by the district court.

This Court stated in *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324:

> A sentence fixed within the limits prescribed by the statute will ordinarily not be considered an abuse of discretion by the trial court. *State v. Dunn*, 91 Idaho 870, 434 P.2d 88 (1967) ... However, in exercising that discretion[,] reasonableness is a fundamental requirement, *State v. Dillon*, 100 Idaho 723, 604 P.2d 737 (1979), and this Court must examine the circumstances of each case to determine whether the punishment imposed is excessive. *State v. Weise*, 75 Idaho 404, 273 P.2d 97 (1954).

As stated in *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982): "The question before us is whether, under any reasonable view of the facts, a term of [here in Daniels: five years with two years fixed] would exceed the period of confinement which appears necessary to protect society, and to accomplish deterrence, rehabilitation, or retribution."

**902**

The maximum sentence for aggravated assault is five years. *See* I.C. § 18–905. However, since the assault was against a member of one of the enumerated classes set forth in I.C. § 18–915, the penalty can be doubled to ten years. The district court sentenced Daniels to a five year term with two years fixed, well under the maximum time allowed. The standard of review assumes that the court acted within its discretion, and the burden is upon to Daniels to show a clear abuse of discretion. *See State v. Seifart*, 100 Idaho 321, 322, 597 P.2d 44, 45 (1979) ("Where a sentence is imposed within the statutory limits, an appellant has the burden of showing a clear abuse of discretion on the part of the court which imposed the sentence.")

Daniels argues that the court abused its discretion in sentencing him to prison based on the following factors: 1) his expressed remorse for the incident; 2) his admitted drug addiction and its possible contribution to his decisions; 3) the possibility of receiving substance abuse education and treatment during a "rider" at the Northern Idaho Correctional Institution; 4) his unstable home environment; and 5) the fact that this is his first felony "transaction," his having been convicted of felony burglary in connection with this same incident. He further argues that the circumstances surrounding this incident are unlikely to reoccur, given the understanding and insight he obtained from the incident.

The district court fully discussed the mitigating and aggravating factors prior to handing down its sentence. The factor most emphasized by the court was the drawing of a loaded weapon on a police officer. The court wanted Daniels, as well as anyone else contemplating such an action, to understand and be very clear about the seriousness of drawing a loaded weapon on a law enforcement officer. The court discussed numerous mitigating and aggravating factors, including Daniels' drug use and addiction, his substantial record in the juvenile system and the apparent desire to rehabilitate himself.

The district court, after considering all of the pertinent factors, found that the goal of rehabilitation was secondary to that of deterrence of Daniels and other members of the community. The court concluded that a person who would draw a weapon on a law enforcement officer under these circumstances should be considered a danger to the community. From the record developed at trial and the factors discussed by the court in the sentencing hearing, as well as the discretion to hand down a ten year sentence (I.C. § 18–915), it does not appear to this Court that the district court abused its discretion in sentencing Daniels.

We therefore affirm the sentence imposed by the district court as being within the court's discretion.

## V.

## CONCLUSION

We hold that the state offered sufficient substantial and competent evidence for a jury to convict Daniels of aggravated assault on a law officer. We further hold that any errors complained of by Daniels during voir dire were harmless, and that the district court did not abuse its discretion by sentencing Daniels to less than half of the time he could have received under the applicable Idaho statutes for aggravated assault on a police officer.

Chief Justice TROUT, Justices SCHROEDER, WALTERS and KIDWELL concur.