771 So.2d 205 (2000)
STATE of Louisiana
v.
Beatrice CHISOLM & Herbert Estes.
No. 99-KA-1055.
Court of Appeal of Louisiana, Fourth Circuit.
September 27, 2000.
*208 Karen Godail, Louisiana Appellate Project, River Ridge, LA, Attorney for Beatrice Chisolm.
Kevin V. Boshea, Williams & Boshea, L.L.C., New Orleans, LA, Attorney for Herbert Estes.
Harry F. Connick, District Attorney, Susan Erlanger Talbot, Assistant District Attorney, New Orleans, LA, Attorneys for State of Louisiana.
Court composed of Chief Judge ROBERT J. KLEES, Judge WILLIAM H. BYRNES, III, and Judge MIRIAM G. WALTZER.
WALTZER, Judge.
Defendants, Beatrice Chisolm and Herbert Estes, appeal their convictions for first degree robbery and their adjudication as fourth felony offenders and their sentences to life imprisonment.

STATEMENT OF THE CASE
On 23 July 1996, appellants Beatrice Chisolm and Herbert Estes were charged by bill of information with two counts, each, of armed robbery. At a pre-trial hearing, the trial court found probable cause and denied the motions to suppress evidence and identifications. A trial on 7 January 1998 ended in a mistrial. On 18 March 1998, the appellants were retried on count two and found guilty of the lesser offense of first-degree robbery. On 2 April 1998, the State entered a nolle prosequi as to count one as to both appellants. On 31 July 1998, the appellants' motions for new trial were denied. The trial court then sentenced each appellant to forty years at hard labor without benefit of probation, parole or suspension of sentence. On 29 January 1999, Chisolm was found to be a fourth offender and sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. On 9 April 1999, following the denial of a motion to quash the multiple bill, Estes was also found to be a fourth offender and sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence.

STATEMENT OF THE FACTS
Around 4:00 p.m. on 8 May 1996, Frank Bradley went to the Club Savoy, a bar near his home. From that time until about midnight, he consumed six or seven beers. As he went toward his vehicle to leave, a female subsequently identified as appellant, Beatrice Chisolm, approached him and struck up a conversation. While she was talking to him, Bradley noticed someone, whom he observed only as a silhouette, enter his vehicle and remove his gun from the car seat. After that, a male subsequently identified as appellant, Herbert Estes, approached and said he knew who took the gun and would get it back for him.
The three of them left the bar in Bradley's vehicle. Bradley let Estes drive because he said he knew the area where the person who took the gun resided. After Estes made two stops with no luck, Bradley told Estes to drive him home, and he would report the gun as missing.
When they got to the house, Bradley invited them in. They had a few more drinks and listened to some music. During this time, Bradley and Estes stayed in the living room. Chisolm went to the bathroom several times. After about an hour, Chisolm and Estes left. Bradley did not know how they got home.
Bradley awoke about 9:00 a.m. on 9 May 1996 and was unable to find the keys to his house and car. He walked to a nearby filling station for cigarettes. When he got back, he saw Estes and Chisolm in his driveway. He noticed an unfamiliar vehicle parked directly across from his house. *209 Bradley told Estes and Chisolm that his keys were missing. Estes replied that he knew where they were. He stated that they were in the bathroom. Bradley said he never keeps his keys there. Estes then went into the bathroom and came out with the keys. Although Estes showed Bradley the keys after coming out of the bathroom, Bradley maintained that they were not in the bathroom when he looked for them that morning.
Estes then mentioned that he was still working on getting Bradley's gun back, but it would cost him. Bradley offered ten dollars. Estes said he would need more money. Bradley then walked into the kitchen. Estes walked behind him and put a knife to Bradley's side. Estes then told Bradley to give him everything he had. Estes took Bradley's watch, cigarettes and seventeen dollars. Chisolm, who was also in the kitchen, told Estes to make Bradley lie down in the bedroom, which he did.
When Estes took Bradley to the bedroom, he told Bradley that he knew there was more in the house, and he intended to find it. Bradley remained in the bedroom until everything was quiet outside. After he got up, he noticed that he was also missing his television set, two VCRs, earrings purchased for his grandchildren, and between eighty and one hundred dollars in change.
Bradley called the police to report the incident. Because the perpetrators were no longer on the scene and no one was in danger, the police responded with a cold call, meaning that it was not a priority. Officer Lizelle Brooks responded at about 3:00 that afternoon. She did not obtain descriptions of the perpetrators, except that they were one male and one female, both black, and about twenty-nine or thirty years old. She also noted that Bradley stated with certainty that he could identify the perpetrators if he saw them.
Officer Louis Martinez followed up on the case. On 21 May 1996, he presented Bradley with two photographic lineups, one which included Chisolm and the other Estes. Bradley immediately and positively picked out the suspects.

ERRORS PATENT
A review of the record indicates that the trial court originally sentenced the appellants immediately following the motion for new trial, without observing the twenty-four hour delay prescribed by LSA-C.Cr.P. art. 873, or obtaining a waiver of the delay by the appellants.[1] However, this error is harmless because the original sentence as to each appellant was vacated when the trial court re-sentenced each one as a multiple offender.

SUFFICIENCY OF THE EVIDENCE CHISOLM AND ESTES
Both appellants claim that the evidence is insufficient to sustain the verdict, among other assignments of error. When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. When the entirety of the evidence both admissible and inadmissible is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must review the assignments of error to determine whether the accused is entitled to a new trial. State v. Hearold, 603 So.2d 731 (La.1992).
The standard of appellate review for sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The reviewing court is to consider the record as a whole, not just the evidence favorable to *210 the prosecution; and, if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict will be upheld. State v. Mussall, 523 So.2d 1305, 1310 (La.1988).
Either direct or circumstantial evidence may prove the essential elements of the crime. With circumstantial evidence the rule is: "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." LSA-R.S. 15:438. This rule is not a separate test from the review standard established by Jackson v. Virginia, but rather it is an evidentiary guideline which facilitates appellate review of the sufficiency of the evidence. State v. Jacobs, 504 So.2d 817, 820 (La.1987). Ultimately, to support a conviction, the evidence, whether direct or circumstantial or both, must be sufficient under Jackson to satisfy any rational trier of fact that the defendant is guilty beyond a reasonable doubt. State v. Sutton, 436 So.2d 471 (La.1983). Credibility determinations are within the discretion of the trier of fact and will not be disturbed unless clearly contrary to the evidence. State v. Vessell, 450 So.2d 938, 943 (La. 1984).
Because the appellants' actions were separate and distinct, though jointly charged and tried, participation in the offense is considered as to each appellant, individually, where appropriate.
First degree robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon.
LSA-R.S. 14:64.1 A.
The victim, Frank Bradley, testified that the appellants befriended him as he was leaving a bar and drove him around as they pretended to help him find his stolen gun. The next morning, the appellants reappeared at his house. After some discussion about the gun, appellant Estes held a knife to Bradley's side, forced him to turn over his watch and cash, then threatened to find his other valuables. Appellant Chisolm told Estes to make Bradley lie down in the bedroom. Once he was sure that Estes and Chisolm were gone, Bradley came out of the bedroom to find that his television set, two VCRs, some earrings and some change were missing. The testimony of Bradley, if credible, is sufficient to sustain the convictions.
Both appellants argue that the victim's identifications are not reliable because the victim was drinking alcoholic beverages for most of the time that he was with the perpetrators. As noted by the State, the victim testified that he had six or seven beers at the bar between four or five o'clock and midnight, less than one beer an hour, when he first met the appellants. Even if Bradley was somewhat inebriated when he met the appellants the night before, he was apparently sober the next morning, when he spent time with them again. Thus, Bradley's drinking the night before the robbery does not make his identifications unreliable.
However, Bradley's drinking may have clouded his judgment in permitting Estes, a virtual stranger, to drive his car, the second issue in this assignment. The drinking may likewise have clouded Bradley's judgment relative to inviting Estes and Chisolm into his home after they allegedly assisted him in a search for his gun. Bradley admitted that, after the fact, he wondered why he allowed a stranger to drive his car. Although allowing a stranger to drive your car or enter your home may indicate poor judgment, Bradley's testimony relative to these facts is not incredible under the circumstances of this case, in which he believed that the appellants were trying to help him.
Appellant Estes avers that the identification is incredible because the victim *211 could give no description to Officer Brooks, the reporting officer. Although Officer Brooks testified that the victim was unable to furnish any description, this testimony was not consistent with the victim's insistence that he would be able to identify the perpetrators, and her report which indicated that he could identify the perpetrators. More likely, Bradley was either unwilling to go through that part of the police report with Officer Brooks, or she never asked him to do so. In either case, she noted that he could identify the perpetrators. In addition, both Bradley and the follow-up officer testified that Bradley identified the perpetrators from photographic lineups, positively and without hesitation.
Appellant Estes additionally notes the discrepancy in Bradley's testimony and his report to Officer Brooks. Bradley testified that the appellant took his watch and some currency, which are not shown as stolen items on Officer Brooks's report. Conversely, Officer Brooks's report indicates that the perpetrators stole Bradley's gun, although Bradley testified that he saw only a silhouette of the person who took the gun. For the most part, the items reported by Bradley on the date of the robbery are the same as the ones he swore at trial were taken from him. It is reasonable for a person to overlook certain items when reporting an incident, which one recalls later.
In addition, although the victim reported that his gun was taken in the robbery, at trial he testified in detail that the gun was taken the night before, when appellant Chisolm distracted him. From the facts presented at trial, the most believable scenario is that appellant Chisolm acted as a decoy, while Estes or a third perpetrator took the gun. Estes and Chisolm then took advantage of Bradley's trust and robbed him of possessions in his house. Even if there is a reasonable doubt that Chisolm and Estes took Bradley's gun, it does not reflect on the robbery of the other items.
Appellant Estes further notes that Bradley did not witness Estes or Chisolm removing the television, VCRs, change or jewelry from his home. Assuming that Bradley was threatened with a knife and taken to the bedroom by the appellants, and when he got up the items were missing, the only reasonable hypothesis is that the appellants took the property.
Appellant Chisolm avers that, even if her identification is found to be reliable, Bradley's testimony only indicates that a female was present when a male perpetrator robbed him. She quotes Bradley as testifying, "I think the female told the gentleman to take me to the bedroom and lay me on the bed."
As noted by the State in response, the context indicates that the victim "thought" that was what happened next in relating his story. He was not uncertain that the female told the male to take the victim into the bedroom. This issue was clarified on redirect when the prosecutor asked Bradley, "who was the person who said take you into the bedroom?" and he responded, "The lady."
The evidence indicates that appellant Chisolm acted as a decoy the night before the robbery, when she distracted the victim while his gun was stolen, and she participated in the robbery by telling Estes to take the victim into the bedroom. In addition, the victim testified that Chisolm went to the bathroom several times the night before the robbery while he and Estes were drinking and listening to music, apparently checking out his property. There could be no reasonable doubt that she was a principal in the offense.
Considering the above, the evidence was sufficient to sustain the conviction as to both appellants.

EXCESSIVE SENTENCECHISOLM
Appellant Chisolm avers that her life sentence is excessive. She cites State v. Dorthey, 623 So.2d 1276 (La.1993), for its holding that a trial court may disregard *212 the punishment range required by the habitual offender statute in order to insure that constitutional, non-excessive sentences are imposed. She avers that the predicate felonies were relatively minor, none of her offenses indicate that she has a violent nature, and she was not armed even in the instant offense.
The first issue that must be resolved is whether appellant Chisolm has preserved this issue for appellate review. Under LSA-C.Cr.P. art. 881.1 a defendant may make or file a motion for reconsideration of sentence within thirty days following the imposition of sentence. In this case, Chisolm filed a motion for reconsideration after the trial court imposed the original sentence, but she did not file a second such motion after the original sentence was vacated and a new sentence imposed after the multiple offender adjudication. The minute entry reflects that no oral objection was made to the sentence at the multiple bill hearing.
In State v. Lewis, 98-2575 (La.App. 4 Cir. 3/1/00); 755 So.2d 1025, this court cited State v. Franklin, 94-409 (La.App. 5 Cir. 12/14/94); 648 So.2d 962, writ denied, 95-0143 (La.5/19/95); 654 So.2d 1354, in which the Fifth Circuit held that it could not review the defendant's excessive sentence claim where he filed a motion for reconsideration after the original sentence was imposed, but failed to file such a motion after he was re-sentenced as a multiple offender. The court explained that LSA-C.Cr.P. art. 881.1 provides that a party may file a motion to reconsider sentence within thirty days of the imposition of sentence. Section D specifically provides:
Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
LSA-C.Cr.P. art. 881.1
Therefore, appellate review of Chisolm's claim of excessive sentence is precluded by her failure to file a new motion for reconsideration of the sentence after the trial court re-sentenced her as a habitual offender.
Even had Chisolm filed such a motion, her claim relative to the non-violent nature of the instant and past offenses would be without merit.[2] In State v. Johnson, 97-1906 (La.3/4/98); 709 So.2d 672, the Louisiana Supreme Court held that the non-violent nature of current or past crimes cannot alone rebut the presumption that the mandatory minimum sentence under the Habitual Offender Law is constitutional. The court further held that, while a defendant's record of non-violent offenses may play a role in the sentencing Judge's determination that the minimum sentence is too long, it cannot be the only or even the major reason for declaring the sentence excessive.
In the instant case, Chisolm claims no other reason to find her sentence excessive. In addition, although the evidence in the instant case indicates that Chisolm's co-defendant was the perpetrator who threatened the victim with a weapon, it also indicates that she was a willing participant in this violent crime.
Considering the court's holding in State v. Johnson, that the non-violent nature of past or present offenses is not sufficient to find the mandatory minimum sentence excessive, and further considering that the appellant cites no other reason to find the sentence excessive, and further considering that the appellant was a principal in a violent offense in the instant conviction, the mandatory life sentence is not unconstitutionally excessive in this case.

*213 HABITUAL OFFENDER ADJUDICATION ESTES

Appellant Estes avers that the trial court erred in adjudicating him to be a fourth felony offender and denying his motion to quash, because the guilty plea forms on the predicate convictions did not inform him of the correct sentence exposure on those offenses. The appellant further avers that the State failed to prove that the cleansing period did not elapse between the first predicate offense and the instant offense.
As noted by the State in response, the cases cited by the appellant were cases in which the defendant challenged his plea to the instant offense on appeal or through post-conviction, not a plea to a predicate offense in a multiple bill adjudication. The trial court, in its judgment on the motion to quash, noted that, under State v. Shelton, 621 So.2d 769 (La.1993), when the appellant objects to the validity of a predicate plea, the State meets its burden of proof if it introduces a "perfect" transcript of the colloquy between the judge and the defendant, in which the defendant is advised of and waives his three Boykin rights, the right to trial by jury, the right against self-incrimination and the right to confront his accusers. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). As further noted by the court, in Shelton, if the State produces something less than a "perfect" transcript, then the court must weigh the evidence submitted by the defendant and the State to determine whether the State has met its burden of proving that the defendant's prior guilty plea was informed and voluntary and made with an articulated waiver of the three Boykin rights. The plea forms submitted by the State relative to Estes's predicate offenses all contained the three Boykin rights. The trial court thus did not err in finding that the State's proof was sufficient to use the convictions as predicates in the multiple bill adjudication.
The State further notes that the only case in which the appellant was allegedly advised of a greater sentence exposure than that provided by statute is a conviction for simple possession of cocaine. In that case, the guilty plea form indicates that the appellant could be sentenced "up to ten years," when the statute provides for a maximum of five years. The State correctly notes that the subject conviction was the appellant's second felony, so he faced a possible ten-year sentence as a multiple offender. He was thus not unfairly induced into a plea.
The appellant further complains that the State failed to prove that the cleansing period did not elapse between his release on a predicate offense and the commission of the instant offense on 9 May 1996. The minute entry from the multiple bill hearing indicates that the defense "made oral argument," and that the defense was to "reduce its argument to writing." In the subsequent memorandum in support of the "Opposition to Multiple Bill of Information," the appellant made no mention of insufficient proof by the State that the cleansing period between convictions had not elapsed. The appellant is required to state with particularity its objections to the multiple bill. LSA-R.S. 15:529.1(D)(1)(a). Accordingly, this claim was not preserved for review.
Even if the appellant had objected to this lack of evidence at the hearing, or in his written opposition, the claim has no merit. The applicable enhancement statute is the one existing at the time of the commission of the offense for which the sentence is to be enhanced. State v. Rolen, 95-0347 (La.9/15/95); 662 So.2d 446; State v. Carr, 96-2388 (La.App. 4th Cir.9/10/97); 699 So.2d 1105, writ denied, 97-2633 (La.2/6/98); 709 So.2d 732. The statute increasing the cleansing period to ten years became effective in 1995. The ten-year cleansing period was thus in effect when appellant Estes committed the instant offense in 1996.
*214 In addition, LSA-R.S. 15:529.1(C) provides that "any period of servitude by a person in a penal institution, within or without the state, shall not be included in the computation of any said ten-year periods." Where less than the time limitation set forth in LSA-R.S. 15:529.1(C) has elapsed between convictions, it is not necessary for the State to prove discharge dates. State ex rel. Clark v. Marullo, 352 So.2d 223 (La.1977); State v. Falgout, 575 So.2d 456 (La.App. 4 Cir.1991).
In the instant case, the appellant was convicted in 1983, 1989, 1993 and 1996. The documents produced by the State are sufficient to indicate that the cleansing period did not elapse between any two convictions. It thus was not necessary for the State to prove the discharge dates of the predicates.
This assignment is without merit.
CONCLUSION
We affirm the convictions and sentences as to both Chisolm and Estes.
AFFIRMED.
NOTES
[1] The transcript indicates some kind of waiver by appellant Estes, although the language is not clear due to what is probably an error in the transcription.
[2] These offenses, as shown in the multiple bill of information, were felony theft, crime against nature and burglary of an inhabited dwelling.