**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 46273**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: January 13, 2020** |
| Plaintiff-Respondent, | ) |
| | ) **Karel A. Lehrman, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| SERGIO MARQUIZ LOPEZ, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Gene A. Petty, District Judge.

Judgment of conviction for witness intimidation, <u>affirmed</u>.

Nevin, Benjamin, McKay & Bartlett; Dennis A. Benjamin, Boise, for appellant. Dennis A. Benjamin argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

_____

BRAILSFORD, Judge

Sergio Marquiz Lopez appeals from his judgment of conviction for witness intimidation, Idaho Code § 18-2604(3). Lopez asserts the district court erred by admitting photographs related to the underlying crime of aggravated battery in violation of Idaho Rules of Evidence 401 and 402. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

The State charged Lopez with aggravated battery as a result of J.C. being stabbed in April 2017 in Caldwell, Idaho. Sometime later, the State also charged Lopez with intimidating a witness after he asked a female acquaintance, K.H., to say Lopez was with her at the time of the stabbing. These charges were consolidated for trial. A jury acquitted Lopez of aggravated battery for the stabbing but was hung on the witness intimidation charge. A second trial on the

1

witness intimidation charge ended in a mistrial after the State played a video referencing Lopez's gang activity in violation of a pretrial ruling excluding such evidence. During Lopez's third trial, which is at issue in this case, the evidence included the following:

J.C. was stabbed in the leg while attending a party at a residence in Caldwell. According to the party's host, Lopez was in the residence's garage at the same time as J.C., and he had been "eyeballing" Lopez. Another witness who attended the party testified that when Lopez and J.C. began fighting, everyone ran out of the garage and left the party.

The party's host testified about seeing blood after the fight. Specifically, he testified that he witnessed Lopez leaving the party and that he had blood all over his back and was leaning on another person for support. Further, the host testified that shortly after seeing Lopez leave, the host saw J.C. leave the party with help from another person but that J.C. did not have any blood on him.

When the police arrived, they discovered a large pool of blood in the garage and followed a trail of blood from the garage to the house next door where they discovered another large pool of blood in that house's garage. The police determined that J.C. was the victim. He was treated at a local medical center before being transferred to the hospital for surgery to control the bleeding. During the police investigation of the stabbing, photographs were taken of the residence where the party occurred, of the house next door, and of J.C. at the medical center.

After interviewing J.C. and other witnesses from the party, the police suspected Lopez of stabbing J.C. When the police interviewed Lopez, he claimed he was not at the scene at the time of the stabbing but rather that he was with K.H. at her house. A police detective then interviewed K.H., who initially claimed Lopez had been with her on the night of the stabbing. When the detective confronted K.H. about her story's inconsistency, she changed her story.

At trial, K.H. testified Lopez had called her the morning after the stabbing and "told [her] to agree with anybody that [Lopez] was with [her]" on the night of the stabbing. K.H. also testified that when the detective interviewed K.H., she initially told the detective that Lopez was with her but then she "told [the detective] the truth, that [Lopez] was not with [her]." K.H. explained that she "just wanted to help out [Lopez]" but "just came clean [and] told [the detective] the truth, that [Lopez] wasn't with [her]." K.H. testified she felt a "little" pressured by Lopez.

2

K.H. also testified about a phone call she received from Lopez in May 2017. K.H. received Lopez's call while she was at the courthouse preparing to testify in a preliminary hearing related to Lopez and the stabbing charge. At the time, Lopez was in jail and the call was recorded. At trial, an audio recording of the call was admitted into evidence. In the audio, K.H. tells Lopez, "No [Lopez], they know you wasn't with me," to which Lopez responded, "Oh I was with you, you got me? Don't even trip. You hear me?" Further, Lopez states during the call, "Stick to the first story that you told [the police] 'cause that's the truth" and "Say I was with you all night. What the fuck, it ain't fucking complicated. . . . Just tell the truth."

Also admitted into evidence were the photographs of the crime scene and of J.C.'s injuries. On the morning of trial, the State disclosed its intention to present the photographs in its opening statement and to offer them as evidence during trial. The photographs included: (1) a photo of the outside of the residence where the stabbing occurred; (2) a photo of the residence's kitchen, which included a trail of blood; (3) a photo of the residence's garage, which included splotches of blood and bloody footprints; (4) a close-up photo of the blood on the garage floor; (5) a photo of blood on the garage floor of the house next door; (6) a close-up photo of the blood on that garage floor; and (7) a photo of J.C. covered in blood with a blood-soaked bandage around his left leg.

Lopez objected to the photographs being shown during the opening statement because they had not yet been admitted into evidence; he also objected to their relevance to the charge of witness intimidation. Except for the close-up photo of the blood on the garage floor of the house next door, the district court ruled that the State could use the photographs during its opening statement and could admit them at trial as long the State laid the proper foundation. During trial, the district court admitted the photographs over Lopez's objections. The jury found him guilty, and he timely appeals.

## II.

## ANALYSIS

The relevance of the photographs of the crime scene and of J.C.'s injuries is the sole issue on appeal. Lopez argues the photographs were not relevant because "the jury could not have gleaned anything of value about the intimidation charge from the photographs of blood on a floor or [J.C.] in a hospital bed." The State responds that the photographs were relevant "to establish[]

3

the criminal proceeding to which [K.H.] would have, had she acceded to Lopez's influence, been a false witness."

Generally, evidence relevant to a material and disputed issue concerning the crime charged is admissible. *State v. Stevens*, 146 Idaho 139, 143, 191 P.3d 217, 221 (2008). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. I.R.E. 401; *Stevens*, 146 Idaho at 143, 191 P.3d at 221. Whether a fact is of consequence or material is determined by its relationship to the legal theories the parties presented. *State v. Johnson*, 148 Idaho 664, 671, 227 P.3d 918, 925 (2010). We review questions of relevance de novo. *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993); *State v. Aguilar*, 154 Idaho 201, 203, 296 P.3d 407, 409 (Ct. App. 2012).

Idaho Code § 18-2604(3) prohibits witness intimidation. It provides in relevant part that:

> Any person who, by direct or indirect force, or by any threats to a person or property, or by any manner willfully intimidates, influences, impedes, deters, threatens, harasses, obstructs or prevents, a witness . . . or any person who may be called as a witness or any person he believes may be called as a witness in any criminal proceeding . . . from testifying freely, fully and truthfully in that criminal proceeding . . . is guilty of a felony.

We conclude the photographs were relevant to the charge of witness intimidation. The photographs depict J.C.'s wounds and the significant amount of blood from those wounds. Thus, the photographs show the serious nature of the stabbing injury. The seriousness of the injury in turn tends to make two facts more probable. First, the injury's seriousness tends to make it more probable that Lopez believed there would be a future criminal proceeding than if the wound had been superficial. Lopez's belief that a criminal proceeding may ensue is relevant to witness intimidation. *See State v. Curry*, 153 Idaho 394, 398, 283 P.3d 141, 145 (Ct. App. 2012) ("[I]f a defendant believes a witness may testify in the future at a criminal proceeding he believes may ensue and intimidates that witness . . . his guilt does not turn on whether a criminal proceeding has already been formally initiated."). Second, the injury's seriousness tends to make it more probable that Lopez would falsify an alibi than if J.C.'s wounds were minor and is relevant to Lopez's motive for intimidating K.H. to falsely claim Lopez was with her on the night of the stabbing.

Further, the photographs were also relevant to the identity of the stabbing victim. The party's host testified that he saw J.C. "eyeballing" Lopez before the altercation; saw Lopez with

4

blood all over his back; and did not see any blood on J.C. This testimony suggested both that Lopez was the stabbing victim--not J.C.--and that J.C.'s injuries were not serious. The photographs of J.C. and the blood from his wounds, however, refute the host's testimony. Although J.C.'s identity was not an element of the crime, the photographs clarified any confusion created by the host's testimony suggesting that Lopez was the stabbing victim and that J.C.'s injuries were not serious. For these reasons, we hold that the district court did not err by ruling the photographs were relevant and admitting them into evidence.

On reply, Lopez challenges the State's argument that photographs were relevant "to establish[] the criminal proceeding to which [K.H.] would have . . . been a false witness." Lopez argues that "the [S]tate did not have to prove that a crime actually occurred, or even that there was actually going to be a criminal proceeding. Instead, it only had to prove that [Lopez] *believed* [K.H.] may testify at a criminal proceeding."

In support, Lopez cites *Curry* in which this Court ruled that "whether a criminal proceeding was pending is irrelevant to whether [the defendant intended] to intimidate a witness." *Curry*, 153 Idaho at 398, 283 P.3d at 145. Rather, "if a defendant believes a witness may testify in the future at a criminal proceeding he believes may ensue and intimidates that witness . . . his guilt does not turn on whether a criminal proceeding has already been formally initiated." *Id.* Lopez also cites *State v. Baer*, 132 Idaho 416, 973 P.2d 768 (Ct. App. 1999), in which this Court held that "whether a criminal proceeding actually occurred is of no import to the instant case. The element is whether Baer *believed* that testimony was given by [the victim] in the context of a criminal proceeding." *Id.* at 418, 973 P.2d at 770.

Based on these cases, Lopez argues the photographs were irrelevant because the State did not have to establish a criminal proceeding. We agree that under *Curry* and *Bauer*, the State in a witness intimidation case does not need to prove an actual criminal proceeding but rather only that the defendant *believes* the witness has testified or may testify in a criminal proceeding. As discussed above, however, the photographs were relevant to show Lopez's probable belief of a criminal proceeding based on the seriousness of J.C.'s injuries and that this belief motivated Lopez to pressure K.H. to testify on his behalf in the anticipated criminal proceeding.

5

## III.

## CONCLUSION

The photographs were relevant to Lopez's charge of witness intimidation, and the district court did not err by admitting them into evidence. Accordingly, this Court affirms Lopez's judgment of conviction.

Chief Judge HUSKEY and Judge LORELLO **CONCUR**.